Good morning, Your Honors. David L. Ross on behalf of the appellant, Mr. Faruqi. We're here today, Your Honors, because the court issued an order asking us to explain why we believe the court has jurisdiction to hear this interlocutory appeal of a denial of what we consider to be a denial of a TRO in connection with a habeas that was filed in district court. And the court cited the case of Andrew v. Ashcroft. The case of Andrew v. Ashcroft specifically states that a stay is not, quote unquote, the same. The word stay is not the same as the word to enjoy. It is our position, Your Honor, that Andrew is a very limited case in its scope, and it is totally distinguished from this case. And therefore, for purposes of an interlocutory appeal, we aver that if a habeas is filed and a TRO is requested and it is denied, the Ninth Circuit has jurisdiction to hear an interlocutory appeal. The reason Andrew is distinguished and is very limited in scope is because Andrew dealt with a very F3. And what happened in that case is something very interesting. 1252B talks about enjoining. 1252F1 talks about enjoining and restraining. And 1252F3 talks about a stay. And the court concluded correctly that it would be absurd to argue that the stay that is contained in the same thing is the enjoining and restraining that's contained in 1252B and 1252F1F2. And the court said it makes no sense if we define the word stay in the context of that particular statute to mean the same thing as to enjoin because you'd have a directly and diametrically opposed conclusion and it would not be consistent with Congressional intent. So that if you were, in fact, to say that stay means enjoin in that particular context, on the one hand, the court wouldn't be able to apply a standard other than clear and convincing. On the other hand, if you considered stay to be the same in the other context, then it would mean that the definition and the burden of proof of the stay would be much lower. So it would be a totally contradictory result. And so the court correctly concluded that in that context alone, a stay as Congress intended with regard to a petition for review of a final BIA decision, ordering somebody removed, in that context alone, a stay is not considered an injunction. In the instant matter, we have something completely different. We have 28 U.S.C. 2241, which is the All Writs Act, petition for writ of habeas corpus. And we have the statute 28 U.S.C. 1292, which is the interlocutory appeal statute governing when you can file an interlocutory appeal. In this case, we're not talking about a contradiction of a statute. We're not talking about a final BIA order of removal. We're talking about a habeas that was filed and an individual asked for a TRO slash preliminary injunction until such time as the underlying issues could be decided. And when it goes up on appeal to the Ninth Circuit on a denial of a TRO, it fits exactly squarely in 28 U.S.C. 1292. Because if we were actually to look at this and say that Andrew governs this particular instance, we would have, again, an absurd result. We would have a situation where somebody files a habeas, and if he's not granted a TRO, his case is over. Because at that moment in time, he will be removed, and he has no recourse whatsoever to any legal remedy. On the other hand, if the TRO is granted, the government has no recourse, and for that reason, the government concurs with us that this court has jurisdiction. Because either way you look at it, if you can't file an interlocutory appeal, you have a final decision, even though you never reach the decision on the merits. Because whatever the district court judge does, that will be looks like a duck, it walks like a duck, and it quacks like a duck, it's a duck. And that's exactly what we have here. It looks like an injunction, it walks like an injunction, it sounds like an injunction. What is the TRO? The TRO is to enjoin the service from removing this individual. Actually, specifically, it's to enjoin John Ashcroft, who was then, well, actually, John Ashcroft at that time, now it's Homeland Security Tom Ridge. But exactly the same thing. This is a case that goes directly to the merits, and for that reason, this is an injunctive remedy. It is not the stay that was contemplated by Andrew, which was very limited in scope. And even the court, the district court noted that. The district court referred specifically to it as a TRO injunction. And that's what happens in all habeas cases. When you file a habeas, you always file concurrently with the habeas a request for a TRO. So for that reason, we respectfully submit to the court that Andrew does not apply in this case and is not only distinguished from this case, but should be considered to be very limited in scope, only applying to a final BIA order, which is not the case here. We're not asking for a petition for review. We have come to this Court by way of a habeas. And I would like to reserve the rest of my time for rebuttal, except for one thing. In the government brief, although the order of the merit of the case, insofar as the government's brief raised the issue of the merits of the case, we would move to strike that portion from the Court's record, because that is not consistent with the Court's order. If I agree with you, then what's our order? I'm sorry, Your Honor? If we agree with you, then what is our order? What would we do? With regard to the interlocutory appeal, the order would be that the Court has jurisdiction to review the denial by the district court of the temporary restraining order slash preliminary injunction. Which should be addressed by a merits panel. Is that what you're saying, or something like that? Yes, that's correct. Exactly. Well, suppose we thought there wasn't any merit in it. Well, that would go to the substantive aspect of the case. Isn't that something we could decide? You're talking about now, or you're talking about? Yes. Well, the Court didn't ask us to brief that, Your Honor. Well, I know, but some things cry out for decision. Well, if the Court wants me to argue the merits of the case, I would argue that the merits are very strong and certainly comport with the Avasi standard. I mean, there's no question that an individual who asked for adjustment of status, the only reason he came before the Immigration Service in the first place is because of a program that has now been disbanded because it was considered to be improper by the government, which is that special registration program that only applied to people coming from Middle Eastern countries or Islamic countries. And he was brought to the Immigration's attention only because of that. He already had an application pending. He qualified under a statute called 245I that specifically said, if you are out of status, but you applied before April 30th of 2001, you are grandfathered in and you cannot be removed because you're entitled to adjustment of status, and he goes into an interview, and the only document that's missing is an affidavit of support that if they had given him two hours' time, he could have rectified that deficiency, and during that very short period of time, they invoke a very esoteric statute called the Visa Waiver Program, where they say, well, technically, you don't have the right to appeal to an immigration judge, which the regulation specifically says you can't appeal denial under a Visa Waiver to an immigration judge. So what happens is they immediately move to remove this individual. They give him a denial of his adjustment of status, and if you look at Exhibit 2, which was given in the brief, attached to the brief by the government, it doesn't even say why he was denied adjustment of status. It just says you've been denied adjustment of status because you're under a Visa Waiver. You're removed. You have no right of appeal. Goodbye. Well, actually, all denials of adjustment of status by the Immigration Service are final decisions. You don't have a right to go to an immigration judge unless they put you in proceedings. So what happens in these cases is if you apply for adjustment of status and they don't put you in removal proceedings, you're allowed to go to Federal court on a declaratory, and that's what he would have done anyway. If the adjustment of status had been denied and he had not been taken into custody and immediately put into a removal process, he would simply file a declaratory under the APA, and he would be eligible for district court review, and the Ninth Circuit would still have jurisdiction to review the case under the APA as a review of a decision by the district court as to a declaratory judgment. Well, I presume if we were to address the merits, you would want an opportunity to brief it. Absolutely. All right. Farewell, counsel. Thank you very much. Good morning. Good morning, Your Honor. Still morning, yes. We pushed it a bit for you, but we're still here. All right. Assistant United States Attorney Ashley Tabador appearing on behalf of Tom Ridge, Secretary of Department of Homeland Security. Could you speak up? I can't hear you. Sure. I'm sorry about that. Your Honor, I believe that there are two issues presented before this Court by the November 18th order. One was whether this Court has jurisdiction over the appeal of a denial of a stay of removal, and second, whether this Court should grant a stay of removal pending the disposition of this appeal. And that second issue is presented at the last paragraph on the first page of the order, where the Court says, grants the appellees time to file a response to the appellant's motion for stay of removal. So contrary to the appellant's representations, I believe that the second issue is squarely before the Court and was properly addressed by the government. However, to start back from the threshold issue, I believe, although the parties agree that the ultimate result is the same, that the Court does have jurisdiction over this appeal. I believe we have slightly divergent views about the analysis that would be appropriate. I believe Andrew is not necessary, is not applicable to this analysis, because what would be applicable is just whether this decision is more akin to a temporary restraining order or more akin to what would be a preliminary or an interim injunction. And a look at Federal Rule Civil Procedure 65b, where there's a discussion about what is characteristics of a temporary restraining order, it is more a situation of a very short period of time where oftentimes the parties are not given an opportunity to be heard. They're oftentimes not even put on notice, and the Court enters some sort of a temporary restraining order for a very short, finite period of time. And this is not the case here. The parties were on notice. The parties were given an opportunity to be heard. There was briefing. Albeit it was on a very expedited basis, and I believe that's more because of the special nature of these cases. When they do come in, they come in as a temporary restraining order, quote, unquote. But it's in effect. Right. I mean, the reason this was expedited is because we have a whole, a large volume of these kind of cases on a legal issue that hasn't been decided yet on jurisdiction in this context, appellate jurisdiction in this context. That's correct. It hasn't been squarely decided. But I believe that the Court, looking at the facts, can see that this is a situation where it fits within the 28 U.S.C. 1292 situation as an interlocutory or appropriate for interlocutory appeal. So we submit that there's no need to refer to Andrew case or cases relating to the standard for seeking a stay of removal, because in this situation, the characteristics of the order are such that it is more akin to a preliminary or an interim injunctive decision. With respect to the second question, whether this Court should grant an appellant's request for a stay of removal, I believe under either standard, again, the Court is not, you know, it's not necessary for the Court to reach the issue of what is the appropriate standard. Nevertheless, under any standard, we submit that the plaintiffs have shown almost a very minimal to almost zero chance of success. Every court that has addressed the issue of an applicant subject to a final order removal under a visa waiver program has found that they are precluded from challenging that order with another application for relief, be it adjustment of status, suspension of deportation. The only exception to that is found in the statute, which is asylum. Under 8 U.S.C. 1187b2, that's the only application that can be subject to a review or it's the only application that a plaintiff or a petitioner can raise to challenge their order of removal. And I would also point out that the adjustment of status application was denied. And that what would happen is not a declaratory relief in the district court. What would happen is the next step would be placed in a removal proceedings. And the visa waiver program is a form of removal proceedings that has its own procedural mechanisms and through which an alien is given a very finite set of sort of procedures for the benefit of gaining entry into the United States without having gone through the general consulate review procedures for seeking a visa. I would also like to point out that not only petitioners have failed, or petitioners fail to show any, or appellant, I'm sorry, I'm still used to more district court, where the appellants have failed to show any likelihood of success on their underlying petition, the habeas petition is still pending at the district court. So there is, you know, there is a sort of a, I'm sorry, I've lost my track of my, I would. There is a remedy down there, but with respect to the only two issues before the court is just whether this court has jurisdiction or whether a stay should be granted. And I don't believe that there's been any showing of a likelihood of success on the merits to warrant a continued or a granting of a stay pending the disposition of this appeal. The disposition, the, well, okay. The habeas is pending. What is being appealed is the denial of the stay. Correct. And the question, what in the briefing order, and we issued an order saying, we may not have jurisdiction over this appeal. Correct. What, I want to know how much of the merits we address right now. I understand your argument about likelihood of success because, but that goes to whether, not whether we have jurisdiction to entertain an appeal of the stay, but whether the stay pending appeal should be granted, I guess. Correct, Your Honor. I believe what would happen if the court should agree with the government's position is that this, it would find that it has jurisdiction over this appeal. Right. It would deny the plaintiff's request for a stay of removal pending the disposition of the appeal. Then the next stage would be briefing on whether the district court properly denied his request for a stay of removal, which is, which is reviewed under a standard, a review. One is whether the legal standard applied to the request was correct, and that's a de novo review. And one, if the standard was correct, whether the district court applied the standard correctly, and that's an abuse of discretion standard. So I believe that's, we are at a threshold position. No, we seem to have cut it into several steps. I'm sorry? We seem to have cut this matter into several steps that we usually don't do. Which is true. We're also aware of that. All right. Unless the court has any more questions. No, I think we have the argument in hand. Rebuttal? First of all, I'd like to disabuse the government of the notion that this is a review of a visa waiver removal. This is not what we're talking about. We're talking about, if you look at the statute, it's very interesting. On page 6 of the government's brief, it specifically says, an alien seeking admission under the visa waiver program who was found inadmissible under the terms of the visa waiver program may be ordered removed without the opportunity for a hearing or judicial review of that decision by any court. That's the government position. Well, if we assume an arguendo that that's correct, we're not in argument with that. Because we're talking about reviewing the denial of the adjustment of status. He wasn't found inadmissible under the visa waiver program. He's admissible under the visa waiver program to adjust status under Section 245I of the Immigration and Nationality Act. The only issue is, they didn't give him time to correct the deficiency, which they're supposed to do. Due process mandates that they have to give him time to correct the deficiency. What they said is, oh, we couldn't adjust you today? That's it. You're removed. Now, what would have happened if he had all the documents in his possession? Would he have been adjusted or wouldn't he have been adjusted? Well, we'll never know because the decision that was issued by the Immigration Service didn't address any of those things. If you look at the decision by the Immigration Service denying adjustment of status, it says, your adjustment is denied because you entered the United States under the visa waiver program. You have no right to appeal. Goodbye. You're removed. They didn't even give a reason why they denied his adjustment of status. So you have an incredible due process issue here. Regulatorily, statutorily, he's entitled to correct the deficiency. Secondly, he would have never been brought before this into a removal proceeding had he not been put in that special registration program, which was subsequently disbanded because the service itself found that it was an inappropriate program. So now we have two situations. We have equal protection and we have due process. Clearly, this case is meritorious. Secondly, not only is it meritorious and likely that he would prevail, but there's irreparable harm. Being removed and not allowed to return for ten years to see your two United States children who are two years old and five years old, of course that's irreparable harm. And the government stands here today and tries to argue that, in fact, this is just a simple removal issue. It is not a removal issue. This is an issue where a person was denied due process. And all of the cases that were cited by the government, first of all, it was only a district court case, it had to do with an issue where the person was trying to invoke a right under the visa waiver program he didn't have. And the second issue, which is really important, is even under the visa waiver program, your waiver has to be knowing and intelligent. What are we talking about? We're talking about an individual who takes a 12-hour flight, comes into an airport, and is given a little green card that's three by five inches that you almost need a magnifying glass to read the words because it has 16 different conditions on it. And you're asked to sign the card at the airport. You have about 30 seconds while you're going through your admission process. So of course you sign the card. And then you find out that you quote, unquote, knowingly and intelligently waived your right to a hearing. Of course not. You have to have a hearing, an evidentiary hearing, to find out whether or not you knowingly and intelligently waived your right because the statute requires that finding that it be knowingly and intelligently done. There's no evidence that the government presented that it was knowingly and intelligently done other than the fact that it's presumed that he signed the document but the burden is on the government contrary to what the government says. And so for that reason alone, the court should exercise jurisdiction and grant the request for a stay or in this case if we call it injunctive relief, whatever we want to call it. In terms of how the court will respond to all of these cases, I think if the court takes an opposite view and allows Andrew to intervene and impact on what we are doing here today, we will have actually chaos. Because what you will have is you have a statute that specifically grants rights, 2241, which is the habeas statute. That statute stands independently of all other statutes and the court has consistently found that that statute preempts all other statutes and is never vitiated by any other statute, even under IRCA, which almost takes virtually away all judicial powers. The court has consistently held that that habeas statute stands independently. Now, what will happen today is if the court decides, A, it doesn't have jurisdiction, or, B, it makes a decision quickly on the merits without looking to an evidentiary proceeding where we can actually find out what will happen? Well, when you say on the merits, there are two ways. One question is do we have jurisdiction over this appeal at all. The next question is if we have jurisdiction, should we give a stay pending appeal. And the third question is how you decide the appeal. And I gather that the third one isn't before us. And I understand there's some argument over whether even the second one's before us. Well, we certainly take the position that the stay should be granted and that the court should decide the issue of the stay and use the Abbasi standard, which is the standard that the court has adopted in every other case. Even though Abbasi originally was decided in a situation where you had a Board of Immigration Appeals final order and it was a decision as to whether or not under 8 U.S.C. 1252-F3 whether or not the court should grant a stay. And that statute gave the court sort of discretionary powers to how it would grant a stay. And the court adopted the Abbasi standard, which was basically to show irreparable harm and a likelihood of prevailing on the merits. So, yes, it would be our position, Your Honors, that the stay should be granted. The court ultimately should make a decision down the road. But until such time as the actual merits of the case come back to the court, it is our position that a stay should be granted and specifically the stay should say stay pending resolution of the district court case. And if the district court finds one way or the other, depending on how the district court finds, if it comes back to the Ninth Circuit at that point in time, the court would then look to the merits of the case. But right now, really the issue is that the case has not been developed through the district court. So what that is why it is crucial that in order to preserve the sanctity of the habeas statute and the right of habeas, the court would have to grant the stay. Thanks for your argument. I wonder if I can take a leaf from your book and say that I've learned a lot from both counsel. And if we hold we have jurisdiction and issue a stay, I really found on the face of it, you're arguing so persuasive, I wonder if the government wouldn't find them persuasive if we entered either into direct contact or went through a mediator. Because on the face of it, at least, it seems a very reasonable position you're taking. And why do we have to, once we wholly have jurisdiction and stay, why you couldn't work this out? But I don't want to force the government, but I wonder what the government would say. Can I ask a question? Sure, sure. Your Honor, I would like to say that I believe the government would not be interested in that sort of resolution, because to explain what has happened, the Petitioner has confused essentially his claim for adjustment of status and tried to bring it into the visa waiver removal order. Let me understand your legal argument. And the only question I think Judge Noonan had is would the government be amenable to, at some point, the assistance of the circuit mediator? And I gather your answer, at least right now, would be no. Is that right? At this point, it would be no. And with an opportunity, if the Court would indulge me to explain why, perhaps we don't find it right. We don't have to answer it. But you have struck me as a particularly gifted representative of the Immigration Service. You see some of these problems. And you've heard the other argument. And I would just like to say, why don't you think about it a little bit and think about whether, if we issue that order, whether you wouldn't be willing to do that rather than risk losing the government's position if you press ahead. So just think about it, will you? I can certainly consult with my client. And I know you want to argue about it, but actually we're just saying it has no effect on the merits of our decision, I want to assure you. But in some cases, it appears that some headway could be made in a particular circumstance to the mediator. So we inquire, and then we allow the parties to express their desires about it. But, yeah. All right. Thank you. Thank you. Thanks. Cases here will be submitted. And we are in recess. All rise. This court for this session stands adjourned. Thank you. Hi, I'm in court in two now. I'm speaking at a business meeting at 1.30. Did you get a notice of that? Yeah, on my calendar I'm speaking at 1.30. And what I did was I didn't shut down. I just wanted to make sure that the spark wasn't going on. I didn't want to be a person who wasn't trying to... Well, it was just me. The cursor became very aware of me. Letting the spark just push. It's just a warning. The other stuff is nothing. I did hit stop, and then I realized that she had session. But then I said no, I did not want to stop the recording. So it's just go all the way out? Okay. Press and click that. Is that pressing? And then you want me to be okay with that? Okay, it's closed. I know why I did that. I did it to change the sound name. Because she's going to have it with a different sound. Oh, the file name. Okay. But when it asked me if I wanted to stop, I said no. Okay.
judges: Canby, Noonan, Thomas